2024 IL App (1st) 232137

SECOND DIVISION
January 30, 2024

No. 1-23-2137B

_____

IN THE
APPELLATE COURT OF ILLINOIS
FIRST JUDICIAL DISTRICT
_____

| | | |
|---|---|---|
| THE PEOPLE OF THE STATE OF ILLINOIS, | ) | Appeal from the |
| | ) | Circuit Court of |
|     Plaintiff-Appellee, | ) | Cook County. |
| | ) | |
| v. | ) | No. 22 CR 0729301 |
| | ) | |
| MITCHELL LEE, | ) | Honorable |
| | ) | Charles P. Burns, |
|     Defendant-Appellant. | ) | Judge Presiding. |

_____

JUSTICE McBRIDE delivered the judgment of the court, with opinion.
Justices Ellis and Cobbs concurred in the judgment and opinion.

**OPINION**

¶ 1    Defendant, Mitchell Lee, appeals from the trial court's order granting the State's verified petition for pretrial detention pursuant to section 110-6.1 of the Code of Criminal Procedure of 1963 (Code) (725 ILCS 5/110-6.1 (West 2022)).

¶ 2    Although the actual charging instrument does not appear in the record on appeal, the record prepared by the clerk of the circuit court pursuant to Illinois Supreme Court Rule 604(h)(2)(i) indicates that defendant was charged with the following offenses—armed habitual criminal, aggravated unlawful use of a weapon (AUUW), unlawful use of a weapon by a felon (UUWF), and manufacture and delivery of heroin.

¶ 3    On November 2, 2023, defendant filed a petition "to remove a financial condition of pretrial release." Defendant noted that a prior bond hearing was held on June 8, 2022, at which time defendant was ordered to be held without bail. Defendant contended, however, that "[e]ffective January 1, 2023, 725 ILCS 5/110-7.5(b) entitle[d] [defendant] to a hearing under 725 ILCS 5/110-5(e) *** after 48 hours of pretrial detention after having been ordered released with pretrial conditions." Defendant asserted that he need not present "new information or a change in circumstance to remove pretrial conditions" and requested a hearing on the petition.

¶ 4    That same day, the State filed a verified petition for a pretrial detention hearing. The State asserted that the charges of AUUW, UUWF, and armed habitual criminal were detainable offenses, and that the proof was evident or presumption great that defendant committed those offenses. The State further asserted that defendant posed "a real and present threat to the safety of any person or persons or the community, based on the specific articulable facts of the case." In support, the State set out that defendant's criminal history included a 2014 robbery, and that he was on parole for a UUWF conviction at the time when he possessed a gun during the instant offense. Finally, the State asserted that no condition or combination of conditions set forth in 725 ILCS 5/110-10(b) could mitigate that risk.

¶ 5    The court held a hearing on the motions that same day. The court noted that defendant had previously filed a motion to reduce bond, which had been denied. The Assistant Public Defender (APD) explained that it was defendant's "wish that [the request] be brought under the new SAFE-T Act, so I have filed *** the proper petition."

¶ 6    The court clarified that it "remember[ed] this case. [Defendant was] caught in Maywood with a gun, there's five people by [a] red Jeep. Defendant starts walking away, put on the ground, patted down and the gun's recovered." The Assistant State's Attorney (ASA) agreed, "That's

2

correct, Judge.\*\*\* [T]he firearm that's recovered is on the defendant's waistband." The ASA stated that it was "the State's position that the proof is evident, the presumption great that the defendant committed" the offenses of armed habitual criminal, UUWF and AUUW.

¶ 7    The ASA further argued that defendant "poses a real and present threat to the safety of any person or persons in the community based on the facts of this case," due to defendant's criminal background. The ASA explained that defendant had previously pleaded guilty to a 2019 offense of UUWF, and less than six months after he was released on parole for that offense, he was found with a gun during the instant offense. The ASA noted that defendant also had a 2014 Class 2 robbery conviction, for which he received four years' imprisonment; a 2008 Class 4 conviction for possession of a controlled substance; and a 2005 Class 1 conviction manufacturing and delivery of a controlled substance. Finally, defendant also had a 2008 conviction in New York for criminal possession of a weapon, for which he received a sentence of 2 to 4 years' in the New York Department of Corrections. The State asserted that based on the above background, there were no condition or combination of conditions that could "mitigate the risk that this defendant is to the public."

¶ 8    In response, the APD explained that the call which led to the police encounter was "for an assault rifle," which was not the weapon that was "alleged to have been retrieved" from defendant. The APD further stated that there was "no call that [defendant] was presenting a threat \*\*\* to the area." The APD argued that electronic monitoring would minimize the risk to the community, and that defendant "has a stable place to live" and "stable support in the community."

¶ 9    In ruling, the court found that the proof was "evident and the presumption is great that the defendant committed the offense. The weapon was found on his person. When it was found on his person, he [had been] on parole for less than six months." The court further explained that the

crime for which defendant had been on parole was "another gun case," and that he also had a robbery conviction, and other felonies in his background.

¶ 10    The court reasoned:

"Obviously, he had limitations on him when he was on parole. Those limitations did not prevent him, at least under the allegations here, from possessing a weapon. I don't see how putting somebody on a bracelet can, in fact, protect the public if an individual is prone to be carrying weapons on his person, even while he was on parole.

I do believe he *** pose[s] a real and present threat to the safety of the community, and I believe that no conditions or combination of conditions can mitigate that threat. *** I do believe that he should be detained until this case is resolved."

¶ 11    The court entered a written order that same day, finding that the State had shown "by clear and convincing evidence that" the "proof is evident or the presumption great that the defendant has committed an eligible offense listed in 725 ILCS 5/110-6.1(a)(l)-(7)," namely, armed habitual criminal, UUWF and AUUW. The court also found by clear and convincing evidence that defendant "poses a real and present threat to the safety of any person or persons or the community, based on the specific articulable facts of the case," noting that defendant "was on parole for a gun offense and possessed a gun." Finally, the court found clear and convincing evidence that:

"[n]o condition or combination of conditions set forth in 725 ILCS 5/110-10(b) can mitigate the real and present threat to the safety of any person or persons or community based on the specific articulable facts of the case. Less restrictive conditions would not avoid a real and present threat to the

4

safety of any person or persons or the community, based on the specific articulable facts of the case."

¶ 12    The court explained that defendant possessed a gun while on parole, and that a bystander called police.

¶ 13    Defendant filed a timely notice of appeal from the trial court's order, asking that he be "released with appropriate conditions." Utilizing the form approved for Illinois Supreme Court Rule 604(h) appeals by defendants, defendant's claim of error consisted of three checked boxes.

¶ 14    First, defendant checked the box labeled:"[t]he State failed to meet its burden of proving by clear and convincing evidence that defendant poses a real and present threat to the safety of any person or persons or the community, based on the specific, articulable facts of the case." Next, defendant checked the box indicating that "[t]he State failed to meet its burden of proving by clear and convincing evidence that no condition or combination of conditions can mitigate the real and present threat to the safety of any person or persons or the community, based on the specific, articulable facts of the case, or defendant's willful flight." Finally, defendant checked the box indicating that the "court erred in its determination that no condition or combination of conditions would reasonably ensure the appearance of defendant for later hearings or prevent the defendant from being charged with a subsequent felony or Class A misdemeanor."

¶ 15    Defendant did not check the box contesting that he was charged with an offense "qualifying for denial or revocations of pretrial release," nor did he contend that the State "failed to meet its burden of proving by clear and convincing evidence that the proof is evident or the presumption great that defendant committed the offense(s) charged."

¶ 16    The appeal is brought pursuant to Public Act 101-652, § 10-255 (eff. Jan. 1, 2023), commonly known as the Safety, Accountability, Fairness and Equity-Today (SAFE-T) Act (Act). See Pub. Act 102-1104, § 70 (eff. Jan. 1, 2023) (amending various provisions of the Act); *Rowe v. Raoul*, 2023 IL 129248, ¶ 52 (lifting stay and setting effective date of Act as September 18, 2023). This court has jurisdiction pursuant to article VI, section 6, of the Illinois Constitution (Ill. Const. 1970, art. VI, § 6) and Illinois Supreme Court Rule 604(h) (eff. Sept. 18, 2023).

¶ 17    The Act amended the Code by abolishing traditional monetary bail in favor of pretrial release on personal recognizance or with conditions of release. 725 ILCS 5/110-1.5, 110-2(a) (West 2022). For qualifying offenses, upon filing a verified petition requesting denial of pretrial release, the State has the burden to prove by clear and convincing evidence (1) that the proof is evident or the presumption great that the defendant has committed a qualifying offense (725 ILCS 5/110-6.1(e)(1) (West 2022)), (2) that the defendant's pretrial release poses a real and present threat to the safety of any person or persons or the community (725 ILCS 5/110-6.1(a)(1)-(7), (e)(2) (West 2022)) or a high likelihood of willful flight to avoid prosecution (725 ILCS 5/110-6.1(a)(8), (e)(3) (West 2022)), and (3) that no condition or combination of conditions can mitigate the real and present threat to the safety of any person or the community or prevent the defendant's willful flight from prosecution (725 ILCS 5/110-6.1(e)(3) (West 2022)).

¶ 18    "Evidence is clear and convincing if it leaves no reasonable doubt in the mind of the trier of fact as to the truth of the proposition in question." *Chaudhary v. Department of Human Services*, 2023 IL 127712, ¶ 74. The standard "requires proof greater than a preponderance, but not quite approaching the criminal standard of beyond a reasonable doubt." *In re D.T.*, 212 Ill. 2d 347, 362 (2004).

¶ 19    In this appeal, defendant maintains that the trial court erred in denying him pretrial release. In defendant's memorandum submitted in appeal pursuant to Illinois Supreme Court Rule 604(h), defendant contends that the State failed to prove by clear and convincing evidence that he poses a real and present threat to the safety of any person, persons or the community based on the specific articulable facts of the case. Defendant further alleges that the State failed to meet its burden of showing clear and convincing evidence, and that the trial court erred in determining, that no conditions could mitigate that threat.

¶ 20    Due to the recent enactment of the statute, courts have been grappling with many important issues regarding the Act and its application. In particular, there understandably has been significant disagreement in the appellate courts as to which standard of review applies.

¶ 21    Some appellate courts have concluded that all aspects of detention hearings under the Act are subject to abuse of discretion review (see *People v. Whitmore*, 2023 IL App (1st) 231807(B), ¶¶ 18-19; *People v. Inman*, 2023 IL App (4th) 230864, ¶ 11), while others have exclusively utilized the manifest weight standard (see *People v. Stock*, 2023 IL App (1st) 231753, ¶ 12). Other courts have adopted a mixed approach, under which the trial court's determinations that the State has proved by "clear and convincing evidence" that the defendant committed a qualifying offense, and that he is dangerous or a flight risk, is reviewed for the manifest weight of the evidence, while the ultimate decision regarding detention, continued detention, or the imposition of conditions of release are subject to abuse of discretion review. See *People v. Saucedo*, 2024 IL App (1st) 232020, ¶¶ 31-36; *People v. Hodge*, 2024 IL App (3d) 230543, ¶ 8; *People v. Vingara*, 2023 IL App (5th) 230698, ¶ 10; *People v. Trottier*, 2023 IL App (2d) 230317, ¶ 13; *People v. Reed*, 2023 IL App (1st) 231834, ¶ 24, 31 (whether the defendant "committed the charged offense" and whether "he poses a danger to the community," are "factual findings" that are reviewed for the "manifest weight

7

of the evidence. However, "an abuse of discretion standard is most appropriate" to review the determination of whether there "were no conditions of release that could mitigate the safety risk"). Still others have concluded that appeals under the Act should be reviewed *de novo*. See *People v. Battle*, 2023 IL App (1st) 231838, ¶ 18; *Saucedo*, 2024 IL App (1st) 232020 (Ellis, J., specially concurring); *People v. Herrera*, 2023 IL App (1st) 231801, ¶¶ 22-24 (declining to decide what standard of review applies, but suggesting that even under *de novo* review, the case could be resolved based on legal error).

¶ 22 Both parties indicate in their memorandums that the appropriate standard of review is abuse of discretion. Nonetheless, we need not determine what standard of review applies in this particular appeal. Based on the record, the memorandums filed by the parties, and the issues presented in this appeal, our decision would be the same under any standard.

¶ 23 Turning to the merits of this appeal, defendant first contends that the State failed to show that he is a threat to a person, persons, or the community.

¶ 24 The circuit court found that defendant presented a threat to the community where, despite being on parole for UUWF, he continued to carry a firearm on his person.

¶ 25 The legislature has delineated a number of factors which the court may consider in evaluating a defendant's dangerousness, including "[t]he nature and circumstances of any offense charged, including whether the offense *** involv[es] a weapon"; "evidence of the defendant's prior criminal history"; whether the defendant "is known to possess or have access to any weapon"; and "whether, at the time of the current offense *** defendant was on *** parole." 725 ILCS 5/110-6.1(g)(1); (g)(2)(A); (g)(7); (g)(8) (West 2022).

¶ 26 The evidence presented to the trial court on the above factors confirms defendant's dangerousness. At the detention hearing, the court heard evidence that defendant has a history of

violent and dangerous offenses, specifically including a robbery conviction, and multiple offenses in which he possessed a firearm when he was not permitted to do so. The current charges involve his possession of a weapon, and defendant has been "known to possess or have access to any weapon," as evidenced by his possession of a firearm while on parole, and his multiple prior convictions involving the unlawful possession of a weapon. Applying the statutory factors, we do not find that the circuit court erred in finding that defendant poses a threat to a person, persons or the community.

¶ 27 Defendant, however, contends that the State did not provide clear and convincing evidence that he was danger because the handgun recovered from his waistband was not the "assault rifle" which was the subject of the call leading to the police encounter, and "there was no evidence of any threat to the safety of any person or the community." This argument, however, ignores his criminal history, and the inherent dangerousness of firearms, particularly when they are in the possession of those who have been prohibited from possessing them.

¶ 28 First, the fact that the call referenced an assault rifle does not make defendant's possession of a handgun any less dangerous. The armed habitual criminal offense, which defendant is alleged to have committed, is specifically aimed at the danger associated with repeat felons possessing firearms. *People v. Martin*, 2018 IL App (1st) 152249, ¶ 23. A person "commits the offense of being an armed habitual criminal" if he possesses "any firearm after having been convicted a total of 2 or more times of any combination of" certain qualifying offenses, including any forcible felony as defined by the Code and UUWF (720 ILCS 5/24-1.7 (West 2022))—here, defendant's armed habitual criminal charge was based on his prior convictions for UUWF and robbery.

¶ 29 Moreover, the legislature has specifically pronounced that "in order to promote and protect the health, safety and welfare of the public, it is necessary and in the public interest to provide a

system of identifying persons who are not qualified to acquire or possess firearms." 430 ILCS 65/1 (West 2022). Defendant, as a convicted felon, is explicitly prohibited from possessing a firearm. *People v. Davis*, 2023 IL App (1st) 231856, ¶ 28, citing 720 ILCS 5/24-1.1 (West 2022) ("[c]onvicted felons may not possess firearms."). Accordingly, defendant's possession of a firearm, "goes directly against the legislature's stated purpose of promoting and protecting the safety of the public from the unlawful possession of firearms by certain individuals." *Davis*, 2023 IL App (1st) 231856, ¶ 28, citing 430 ILCS 65/1 (West 2022). Additionally, the record reveals that defendant was carrying the handgun in his waistband, and the indictment, which the State has attached as an appendix to its brief,[1] indicates that the handgun was "uncased, loaded, and

---

[1] We note that, pursuant to Illinois Supreme Court Rule 604(h)(2), the obligation to furnish the record on appeal does not rest on the appellant as in other appeals. Instead, the clerk of the circuit court is directed to file the record, "which shall include the Notice of Appeal, the order appealed from, and *supporting documents or matters of record necessary to the appeal*." (Emphasis added). Also pursuant to Rule 604(h), any supplemental supporting record filed by the appellee must accompany the response and be authenticated according to Rule 328. Accordingly, we recognize that, by attaching the indictment to its memorandum, the State did not follow the proper procedure for supplementing the record. Nonetheless, we believe that the charging documents are "matters of record necessary to the appeal," which should have been included in the record prepared by the clerk, and we may take judicial notice of them. See *People v. Schlabach*, 2012 IL App (2d) 100248, fn 1 (taking judicial notice of indictment); *Country Companies v. Universal Underwriters Insurance Co.*, 343 Ill. App. 3d 224, 229 (2003) (noting that a reviewing court may take judicial notice of public records).

immediately accessible." See *People v. Ross*, 229 Ill. 2d at 275 (explaining that "loaded guns" are part of a category of weapons that are "dangerous *per se*"). In these circumstances, we find that the State established by clear and convincing evidence that defendant poses a real and present threat to the safety of a person, persons or the community.

¶ 30    Next, defendant contends that the State failed to establish by clear and convincing evidence, and that the court erred in determining, "that no condition or combination of conditions" could mitigate the threat he presents to the community.

¶ 31    Once the trial court finds that the State proved a valid threat to the safety of any person or the community by clear and convincing evidence, the trial court must determine which pretrial release conditions, if any, will reasonably ensure their safety and the likelihood of compliance by the defendant with all the conditions of pretrial release. 725 ILCS 5/110-5(a) (West 2022). As applicable here, the trial court must consider:

> "(1) the nature and circumstances of the offense charged;
>
> (2) the weight of the evidence against the defendant ***;
>
> (3) the history and characteristics of the defendant, including:
>
>> (A) the defendant's character, physical and mental condition, family ties, employment, financial resources, length of residence in the community, community ties, past relating to drug or alcohol abuse, conduct, history [*sic*] criminal history, and record concerning appearance at court proceedings; and
>>
>> (B) whether, at the time of the current offense or arrest, the defendant was on *** parole ***;

(4) the nature and seriousness of the real and present threat to the safety of any person or persons or the community, based on the specific articulable facts of the case, that would be posed by the defendant's release ***;

(5) the nature and seriousness of the risk of obstructing or attempting to obstruct the criminal justice process that would be posed by the defendant's release, if applicable;

725 ILCS 5/110-5(a) (West 2022). The statute lists no singular factor as dispositive. See 725 ILCS 5/110-5(a) (West 2022).

¶ 32     In this case, the trial court found that defendant "[o]bviously *** had limitations on him when he was on parole" but that he violated those limitations by possessing a weapon. The circuit court explained, "I don't see how putting somebody on a bracelet can, in fact, protect the public if an individual is prone to be carrying weapons on his person, even while he was on parole."

¶ 33     Defendant, however, asserts that the fact that he "was on parole from a gun case" does not establish clear and convincing evidence that no condition could have mitigated the risk, because the court could have ordered conditions "more restrictive" than parole, "such as electronic monitoring, GPS monitoring or geographic limitations." The circuit court, however, explained that defendant's previous failure to comply with the limitations placed upon him, by possessing a weapon while prohibited from doing so, suggested that no conditions could mitigate the threat that defendant posed to the community. Where, as here, defendant has a demonstrated history of refusing to abide by conditions of release, we find that that the State met its burden of showing clear and convincing evidence that no less restrictive conditions would reasonably ensure the safety of a person, persons, or the community, and that the trial court did not err in so finding.

¶ 34    Finally, we note that defendant briefly contends that there was "no evidence presented concerning what conditions were part of his parole." To the extent that defendant's argument suggests that there was no evidence that those conditions included a prohibition on possessing a handgun, we find such an argument strained, to say the least.

¶ 35    As established above, defendant is a convicted felon, and as such, is prohibited from possessing a gun. 720 ILCS 5/24-1.1 (West 2022); *Davis*, 2023 IL App (1st) 231856, ¶ 28. Moreover, certain conditions apply to every person who is on parole, including that a person on parole must "refrain from possessing a firearm or other dangerous weapon." 730 ILCS 5/3-3-7(a)(2) (West 2022). Here, the trial court explicitly referenced its accurate understanding that defendant was prohibited from possessing a weapon, and we find no basis whatsoever to support defendant's suggestion that his parole conditions may not have included such a limitation.

¶ 36    For the foregoing reasons, we affirm the circuit court of Cook County's order granting the State's verified petition for pretrial detention.

¶ 37    Affirmed.

*People v. Lee*, 2023 IL App (1st) 232137

| | |
|---|---|
| **Decision Under Review:** | Appeal from the Circuit Court of Cook County, No. 22 CR 0729301; the Hon. Charles P. Burns, Judge, presiding. |
| **Attorneys for Appellant:** | Sharone R. Mitchell, Jr., Cook County Public Defender, of Chicago (Rebecca Cohen, Assistant Public Defender) for appellant. |
| **Attorneys for Appellee:** | Kimberly M. Foxx, State's Attorney, of Chicago (Adam C. Motz, Assistant State's Attorney), for the People. |