2024 IL App (1st) 240586-U

No. 1-24-0586B

Order filed May 30, 2024

Fourth Division

**NOTICE:** This order was filed under Supreme Court Rule 23 and is not precedent except in the limited circumstances allowed under Rule 23(e)(1).

IN THE

APPELLATE COURT OF ILLINOIS

FIRST DISTRICT

| | | |
|---|---|---|
| THE PEOPLE OF THE STATE OF ILLINOIS, | ) ) | Appeal from the Circuit Court of Cook County. |
| Plaintiff-Appellee, | ) ) | Nos. 22 CR 3982 |
| vs. | ) ) | |
| CARY HIGH, | ) ) | Honorable Thomas Byrne, |
| Defendant-Appellant. | ) | Judge, presiding. |

JUSTICE MARTIN delivered the judgment of the court.
Justices Hoffman and Ocasio concurred in the judgment.

**ORDER**

¶ 1    *Held*:    The State's petition for detention was timely filed. The circuit court's order is affirmed where the State proved by clear and convincing evidence that the proof is evident or the presumption great that High committed an eligible offense, that he poses a real and present threat to public safety, and that no conditions of release would mitigate that threat.

¶ 2    Defendant Cary High appeals the circuit court's order granting the State's petition for pretrial detention, pursuant to Illinois Supreme Court Rule 604(h) (eff. Sept. 18, 2023). High was arrested and charged prior to the effective date of Public Act 101-652 (eff. Jan. 1, 2023), commonly known as the Safety, Accountability, Fairness and Equity-Today (SAFE-T) Act (Act).[1] For the

---

[1]"The Act has also sometimes been referred to in the press as the Pretrial Fairness Act. Neither name is official, as neither appears in the Illinois Compiled Statutes or public act." *Rowe v. Raoul*, 2023 IL

following reasons, we affirm the order of the circuit court granting the State's verified petition for pretrial detention.

¶ 3                                                    I. BACKGROUND

¶ 4        High was charged with robbery (720 ILCS 5/18-1(a) (West 2022)) and unlawful restraint (720 ILCS 5/10-3 (West 2022)) following a January 31, 2022 incident in which he threatened a woman and her young children. He was ordered held on a $250,000 D bond but was unable to post the requisite $25,000 and remained in custody.

¶ 5        Separately, High was charged in case 24 CR 3983 with robbery and unlawful restraint after an unrelated February 2022 incident.

¶ 6        High's case was set for trial on February 28, 2024; however, defense counsel requested a continuance in light of newly tendered discovery. Counsel then made an oral motion requesting that the court reconsider High's detention status "under the Pretrial Fairness Act." As High had not yet requested to have his status reviewed under the Act, the State requested a brief recess, so they could file a responsive verified petition to deny pretrial release, pursuant to sections 5/110-2 and 5/110-6.1 of the Code of Criminal Procedure of 1963 (Code) (725 ILCS 5/110-2, 110-6.1 (West 2022)). Defense counsel objected, arguing that the State could not file a petition as it would not comply with the Act's timeliness requirements. The court stated it would allow the State to file a petition over the defenses' objection and passed the matter for a hearing.

¶ 7        Upon reconvening, defense counsel restated her strenuous objection to the untimeliness of the State's petition, arguing that section 110-7.5(B) of the Code only allows for defendants such as High one remedy—a hearing under section 110-5(e). Accordingly, defense counsel contended the State should not be allowed to file a detention petition, and that the Court should merely

_____

129248, ¶ 4 n. 1. *Raoul* lifted the stay of pretrial release provisions and set an effective date of September 18, 2023. *Id.* ¶ 52; Pub. Acts 101-652, § 10-255, 102 1104, § 70 (eff. Jan. 1, 2023).

evaluate whether High's continued confinement is necessary and appropriate. The court noted the split in appellate authority regarding the appropriate interpretation of the timeliness provision of the Act. It observed that defense counsel's reading of the Act would result in the court's inability to detain High, since more than 21 days had passed since the effective date of the Act. The court further noted that High had a choice between either posting monetary bond under the previous system or availing himself of the provisions under the new Act. Defense counsel agreed, stating that High wanted to be treated under the Act and was choosing to forfeit his ability to post bond. However, counsel maintained that once under the Act, the court only had the option to release High with conditions. The State cited *People v. Haisley* in support of their argument that the filing of a detention petition was timely, in response to High's request to be considered under the Act.

¶ 8      The court reiterated that would allow the State to file its petition, finding that the State's petition in the instant circumstances would be timely and proper.[2] The State's petition alleged that High committed an eligible offense (robbery) as listed in Section 5/110-6.1(a)(1.5) of the Code, and that he "poses a real and present threat to the safety of any person or persons in the community." Specifically, the State relayed that:

> "On 1/31/22 defendant ('D') approached victim ('V') while V was walking with her [three] small children. D asked V for food and V agreed to buy D food. They walked to a restaurant, at which time D asked V for cash. V declined. D stood in front of V's stroller and said he could show V where an ATM was. V said she did not want to do that. D said, 'You have such beautiful children. I bet you'd do anything for these kids.' V interpreted this, combined with D's actions, as a threat, so accompanied D to a nearby

---

[2]The State announced that it was seeking detention on both cases 24 CR 3982 and 24 CR 3983. We do not have a copy of the petition filed in case 24 CR 2983 before us in the record, but both the State and the court referenced petitions, plural. In any case, it is of no moment, as High is not appealing the detention order in 24 CR 2983.

ATM. D continued to make similar statements as above. D stood next to V as V used the ATM and D attempted to press the buttons for higher withdraw amounts. V told D she did not have that much money in the account and withdrew $20 and gave it to D. D then left. V identified D in a photo array. D identified himself in still images at the ATM."

¶ 9   The court then conducted a hearing on the petition. The State proceeded by proffer on case 24 CR 3982, arguing that the proof is evident, or the presumption great that High committed robbery on January 31, 2022. On that day, the female victim was walking with her three small children. High approached her and requested she buy him food. The victim agreed and they walked to a nearby restaurant. High then asked for cash instead, but the victim declined. High stood in front of the victim's stroller—where one of her children sat—and stated he could show her where an ATM was. The victim again stated she did not want to do that. High responded, "you have such beautiful [children], I'd bet you'd do anything for these kids." Interpreting this statement, High's actions, and his close proximity to her children as a threat, the victim accompanied High to a nearby ATM. High continued to make similar perceived threats regarding the victim's children. When the victim inserted her card in the ATM machine, High stood next to her, attempting to press buttons for higher withdrawal amounts. After informing High she did not have much money in her account, she ultimately withdrew $20 and gave it to High, who left. The victim thereafter identified High in a photographic array. Once arrested, High identified himself in still images from the ATM incident.

¶ 10   The State then proffered facts related to case 24 CR 3983. On February 4, 2022, High approached a different female victim and asked her to buy him food. She acquiesced and they walked to a nearby restaurant. The victim gave High $5 and attempted to leave. High, however, demanded that the victim go with him to get money from an ATM, "or else." Feeling threatened, the victim said okay. She attempted multiple times to move away from High but was unable to.

4

During the incident, High asked the victim personal questions and commented on her appearance. The victim followed High to another building, but the door was locked. The victim again tried to leave but High physically blocked her path and threatened to hurt her if she did not remain with him. High then led her to a store's ATM, where she withdrew $20. When she gave the money to High, he stated he needed more. The victim withdrew another $40 and gave it to High, who then left. Thereafter, the victim viewed a photographic array but was unable to identify High. Once arrested, High again identified himself in a still image from the incident at the ATM.

¶ 11    High's previous criminal history consists of a 2013 Class 2 robbery conviction (eight years in the Illinois Department of Corrections (IDOC)), a 2011 failure to register conviction (three years in the IDOC), a 2003 Class 4 possession of a controlled substance conviction (30 months in the IDOC), and 1990 aggravated kidnaping and aggravated criminal sexual assault convictions (25 years in the IDOC).

¶ 12    The State contended that no condition or combination of conditions including, but not limited to, electronic monitoring (EM) can mitigate the risk that High poses to the community. Specifically, they argued that EM allows for 16 hours of essential movement, during which High would have unrestricted movement, and could continue committing similar crimes.

¶ 13    Defense counsel countered that the proof is not evident that High committed any crimes in either case. Rather, counsel argued, High simply asked for money in exchange for the food the victims had already offered him. Accordingly, High is neither a danger to the community as a whole nor any individual person. Counsel further argued that less restrictive conditions, not limited to EM, would be sufficient. She highlighted that High was arrested in both cases simultaneously and that there is no indication he has committed any infractions while detained in jail. Counsel highlighted that High is "upward there in age," and indicated that his age meant he is not a physical threat.

¶ 14    The court granted the State's petition for pretrial detention, specifically noting that it did not observe High as particularly old or in any way infirm, but rather he appeared physically healthy. The court additionally highlighted that it appears High has behaved appropriately in jail. However, the court then focused on the proffered facts of the cases before it. The court found that "the victims in these two cases demonstrated an opportunity for [High] to act in a threatening manner." It further determined that the State's proffer indicated that High approached a woman with three small children under the guise of wanting help. Instead, he threated the victims and used his size to coerce the young woman and her small children. The court specifically detailed that High chose his victims in two separate incidents, using tactics to gain their trust before using his size and gender to coerce the victims into traveling to a secondary location to withdraw money. Accordingly, the court held that it is "certainly a situation in which I find that [High] poses a real and present threat to the safety of persons in our community." The court determined the State, in each instance, had shown by clear and convincing evidence that the proof is evident and the presumption is great that High committed the eligible offense of robbery. Based on the proffered facts, the court found that High poses a threat to the safety of the community such that there is no combination of conditions that can mitigate that threat. Consequently, the court found High a danger to society and denied his request for release, instead granting the State's detention petition.

¶ 15    The court entered a written detention order using a template form that lists the requisite three propositions preprinted on the form—(1) the proof is evident or the presumption great that the defendant has committed a detention eligible offense, (2) the defendant poses a real and present threat to the safety of any person(s) or the community, based on the specific articulable facts of the case, and (3) no condition or combination of conditions of release can mitigate that threat. On lines provided below each proposition, the court wrote specific facts from the case that it relied upon to reach its findings. Beside the preprinted finding for the first proposition, the court wrote,

6

"Robbery." For the second proposition, the court wrote, "[High] made implied threats to a mother towards her small children to force [victim] to go to ATM machine and withdraw cash." For the third proposition, the court wrote: "[High], through threat of force to a mother and her small children intimidated and used coercion to have [victim] withdraw money from an ATM." The order indicates that High is to be detained pending trial.

¶ 16       High filed a timely notice of appeal on March 11, 2024.

¶ 17                                II. ANALYSIS

¶ 18       On appeal, High did not file a brief, choosing instead to stand on the arguments he made in his notice of appeal. Utilizing the approved form from the Article VI Forms Appendix to the Illinois Supreme Court Rules (see Ill. S. Ct. Rs. Art. VI Forms Appendix R. 604(h)), High's claims of error consisted of six claims: (1) the State failed to prove by clear and convincing evidence that the proof is evident or the presumption great that he committed the offenses charged; (2) the State failed to prove by clear and convincing evidence that he poses a real and present threat to the safety of any person(s) or the community; (3) the State failed to prove by clear and convincing evidence that no condition or combination of conditions can mitigate the real and present threat he poses; (4) the court erred in its determination that no conditions would reasonably ensure his appearance for later hearings or prevent him from being charged with a subsequent felony or Class A misdemeanor; (5) he was denied an opportunity for a fair hearing prior to the entry of the order denying pretrial release; and (6) the State's petition was untimely. More specific arguments were supplied in the blank spaces below these preprinted assertions.

¶ 19       As further support, High argues that the State failed to meet its burden that he committed the charged offense where the court relied on the State's representation that the victim identified High via a photographic array following the incident. High offers only broad statutory and case law language regarding the standard of proof to support his argument that the State did not prove

he was a threat. He claims the State failed to prove that no conditions can mitigate any threat he may pose where the State failed to prove he committed the offense so it could not prove he poses a threat, and he does not have a history of failure to comply with court orders. Next, High argues the court's detention order does not comply with the Act because there was no evidence presented at the hearing indicating High is or would be a repeat offender who would not comply with court orders. High argues that he has never been afforded the opportunity to succeed on pretrial release due to his criminal background. Last, High asserts that the State's petition was not timely filed, the court prevented defense counsel from citing to numerous appellate cases, and there were no changes in circumstance which triggered a need for a detention hearing.

¶ 20    The State chose to file a responsive memorandum, arguing that their petition was timely filed in response to High's request to have his case reviewed under the Act. The State contends that the court properly exercised its discretion where they proved by clear and convincing evidence that High robbed the victim, that he poses a real and present threat to the safety of the community, and that no conditions could mitigate that risk. The State asserts that High's argument regarding the court's failure to comply with the Act is unclear, but notes that the court's order nonetheless stated its reasons for denying High pretrial release.

¶ 21    In considering this appeal, this court has reviewed the following documents which were submitted under Illinois Supreme Court Rule 604(h) (eff. Sept. 18, 2023): (1) High's notice of appeal pursuant to the Act, (2) the supporting record, and (3) the State's Response to High's appeal.

¶ 22    "Pretrial release is governed by section 110 of the Code as amended by the Act." *People v. Morales*, 2023 IL App (2d) 230334, ¶ 4 (citing 725 ILCS 5/110-1 et seq. (West 2022)). Pursuant to the Code, "it is presumed that a defendant is entitled to release on personal recognizance on the condition that the defendant shall attend all required court proceedings and the defendant does not commit any criminal offense, and complies with all terms of pretrial release." 725 ILCS 5/110-2(a)

(West 2022). Under the Code, all persons charged with an offense are eligible for pretrial release before conviction. *Id.* The court may deny pretrial release only upon a verified petition by the State and following a hearing. 725 ILCS 5/110-6.1(a) (West 2022). It is the State's burden to prove by clear and convincing evidence that (1) the presumption is great or the proof evident that the defendant committed a detainable offense, (2) the defendant poses a real and present threat to the safety of any person(s) or the community, based on the specific and articulable facts of the case, and (3) no condition or combination of conditions can mitigate the threat the defendant poses, or prevent the defendant's willful flight from prosecution. 725 ILCS 5/110-6.1(e)(1)-(3) (West 2022). The standard "requires proof greater than a preponderance, but not quite approaching the criminal standard of beyond a reasonable doubt." *In re D.T.*, 212 Ill. 2d 347, 362 (2004).

¶ 23    If the court determines that the State has met its burden and the defendant should be denied pretrial release, the court is required to make a written finding summarizing the reasons for denying pretrial release. *Id*. § 6.1(h)(1). If the court finds that detention is not appropriate, it can impose additional conditions if it determines such conditions:

> "are necessary to ensure the defendant's appearance in court, ensure the defendant does not commit any criminal offense, ensure the defendant complies with all conditions of pretrial release, prevent the defendant's unlawful interference with the orderly administration of justice, or ensure compliance with the rules and procedures of problem solving courts." 725 ILCS 5/110-10(b) (West 2022).

¶ 24                    A. Timeliness of Detention Petition

¶ 25    High claims that the trial court erred by considering and granting the State's petition, which was untimely pursuant to the Act, where it was filed outside the 21 day deadline mandated by the Code. The State contends that since High—a defendant subject to Section 5/110-7.5 of the Code—

was never released post arrest, the State's 21-day timeline to file a detention petition never began to run.

¶ 26          When we interpret a statute, our primary objective is to ascertain and give effect to the legislature's intent. *Hernandez v. Lifeline Ambulance, LLC*, 2020 IL 124610. The best indication of the legislature's intent is the plain language of the statute itself. *Id*. When the language of the statute is clear and unambiguous, we must apply it as written, *id.*, without resorting to further aids of statutory construction. *Cothron v. White Castle System, Inc.*, 2023 IL 128004, ¶ 20. According to well-established principles of statutory interpretation, we must construe a statute so that all the language used in the statute is given effect and so that no word, clause, or sentence is "rendered meaningless, superfluous or insignificant." (Internal quotation marks omitted.) *People v. Jones*, 397 Ill. App. 3d 651, 657 (1st Dist. 2009). *See also Blum v. Kostner*, 235 Ill. 2d 21, 44 (2009) ("we construe the statute to avoid rendering any part meaningless or superfluous"); *Crawford Supply Co. v. Schwartz*, 396 Ill. App. 3d 111, 117 (1st Dist. 2009).

¶ 27          Section 5/110-6.1(c)(1) of the Code mandates the timing of a petition to detain as follows:

         "A petition may be filed without prior notice to the defendant at the first appearance before a judge, or within the 21 calendar days, except as provided in Section 110-6, after arrest and release of the defendant upon reasonable notice to defendant; provided that while such petition is pending before the court, the defendant if previously released shall not be detained." 725 ILCS 5/110-6.1(c)(1) (West 2022).

¶ 28          Section 110-7.5 of the Code provides guidance regarding individuals who were arrested prior to the effective date of the Act and separates those individuals into three categories. 725 ILCS 5/110-7.5 (West 2022). The first category is comprised of any defendant released subject to pretrial conditions prior to the Act's effective date. *Id.* § 110-7.5(a). The second category is comprised of any defendant remaining in pretrial detention after having been ordered released with pretrial

conditions, including the condition of depositing monetary security. *Id*. § 110-7.5(b). Last, the third category is comprised of "any person, not subject to subsection (b), who remains in pretrial detention and is eligible for detention under Section 110-6.1." *Id*.

¶ 29    High falls into the second category, as an individual who remained in detention despite being ordered released with the condition of depositing a monetary security prior to the Act's effective date. Such defendants may either choose to remain subject to the prior monetary bond order or they may file a motion seeking a hearing to have their pretrial conditions reviewed anew. *People v. Rios*, 2023 IL App (5th) 230724, ¶ 16. However, if a defendant elects to be considered for release under the Act, courts have generally held that the State may file a responding petition to detain. *E.g.*, *People v. Earnest*, 2024 IL App (2d) 230390, ¶ 22; *People v. Forthenberry*, 2024 IL App (5th) 231002, ¶ 27; *People v. Jones*, 2023 IL App (4th) 230837, ¶ 24; *People v. Gray*, 2023 IL App (3d) 230435, ¶ 15; see also *People v. Haisely*, 2024 IL App (1st) 232163, ¶ 22 (finding that the 21-day limit had not yet run where the defendant remained in custody pursuant to an order requiring the posting of a monetary bond).

¶ 30    Here, the circuit court clarified at the hearing on defense counsel's oral motion that High had the option of posting monetary bond under the previous system or availing himself of the provisions under the new Act. Defense counsel agreed, stating that High wanted to be considered under the Act and was choosing to forfeit his ability to post bond. Since High exercised his right to a hearing under the Act, the entirety of the Act applied, and the State was properly allowed to file a *responsive* detention petition. While we acknowledge that some panels of this court have decided differently (*e.g.*, *People v. Brown*, 2023 IL App (1st) 231980), we continue to hold that "the State may petition for the denial of pretrial release of defendants who were ordered released on bond but were still detained when the Act went into effect." *People v. Whitmore*, 2023 IL App

(1st) 231807, ¶ 8. Accordingly, we find no error in the court hearing the State's *responsive* petition to detain in this case.

¶ 31    High additionally claims that the court precluded his attorney from citing appellate cases which supported her position that the State's petition was untimely. We find this contention is belied by the record, where defense counsel was given ample opportunity to voice her objections and provide argument in support of her position.

¶ 32                              B. Hearing on the Detention Petition

¶ 33    We now turn to the February 28, 2024 hearing. There has been considerable disagreement amongst the appellate court as to which standard of review applies to pretrial release orders. See *People v. Lee*, 2023 IL App (1st) 232137, ¶ 21 (observing split regarding abuse of discretion, manifest weight of the evidence, and *de novo* standard under the Act). Here we need not opine on the proper standard of review, where we would affirm under any standard.

¶ 34    High argues that the State failed to meet its burden of proving, by clear and convincing evidence, that the proof is evident or the presumption great that he committed robbery because the court relied on the State's representation that the victim identified him via a photographic array following the incident. We are unpersuaded by High's argument. The State proffered evidence that High approached the victim and her three minor children, requesting assistance with buying a meal. The victim agreed, but once they reached a nearby restaurant, High demanded money instead. The victim informed High she was uncomfortable giving him cash, and in response, High threatened the safety of her young children. He then led her to an ATM, while repeatedly threatening her children, where he induced her to withdraw cash. The State's proffer indicated that the ATM had video recording and that this portion of the incident was captured on video. Additionally, the victim identified High as the offender in a photographic array. Furthermore, High identified himself in still photographs from the video. Given this plethora of proffered evidence,

we cannot say the court's finding that the proof is evident or the presumption great that High committed the offense is unreasonable, arbitrary, or not based on the evidence present. *Chatman*, 2024 IL 129133, ¶ 34. Nor can we say that no reasonable person would agree with the position adopted by the circuit court. *Id.* More importantly, as the Act specifically authorizes the State to proceed by way of proffer, we reject High's insinuation that the State ought to have presented direct testimony from the victim rather than relying on the proffered victim's statements. See 725 ILCS 5/110-6.1(f)(2), (5) (West 2022).

¶ 35    High next contends the State failed to meet its burden to prove he poses a threat to the community. High offers only broad statutory and case law language regarding the State's standard of proof in support of his argument that the State did not prove he poses a threat. We agree with the State that, where High failed to provide a scintilla of argument based on the facts of this case, review of this claim is forfeited. We find High similarly situated to the defendant in *People v. Inman*, where High did not detail his argument on this claim either through the form notice or through a memorandum. 2023 IL App (4th) 230864, ¶ 13. As the *Inman* court noted, "[a] reviewing court is entitled to have the issues on appeal clearly defined with pertinent authority cited and a cohesive legal argument presented. The appellate court is not a depository in which the appellant may dump the burden of argument and research." (Internal quotation marks omitted.) *Id.* (quoting *People v. Macias*, 2015 IL App (1st) 132039, ¶ 88). "We cannot be expected to formulate an argument for defendant out of whole cloth." *Id.* Where High presented only a conclusory claim of error and neither referenced evidence in the record nor provided any legal argument or authority in support of his claim, we decline to review the issue. See *People v. Duckworth*, 2024 IL App (5th) 230911, ¶ 8 (finding the defendant forfeited the issues raised on appeal where the defendant provided the court with nothing on which to base an analysis of the defendant's allegations).

¶ 36    High thereafter claims that the State failed to prove that no conditions of release can mitigate any threat he may pose, where the State failed to prove he committed the offense so it could not prove he poses a threat, and he does not have a history of failure to comply with court orders. The State counters that High's claim is conclusory, and that they proffered evidence of prior convictions plus two new charges committed in a short timeframe, which demonstrates that no conditions could protect society or prevent High from committing additional crimes. We agree with the State.

¶ 37    As detailed above, the evidence proffered at the hearing indicated that the proof is evident or the presumption great that High committed the offense of robbery. Moreover, the State proffered evidence indicating that, just four days after the instant incident, High approached a different female victim, under an identical guise that he needed her assistance to buy food. The victim gave High $5 and attempted to leave. High then threatened the victim and prevented her multiple attempts at escape. He asked her personal questions, commented on her appearance, threatened physical harm, and took her to two separate locations in his attempt to get more money from her. Ultimately High left after receiving another $60 from the victim. High identified himself in a still image captured from the ATM during the incident.

¶ 38    Further, during its proffer, the State explicitly argued that no conditions including, but not limited to, EM could mitigate the risk that High poses to the community, where EM allows for 16 hours of essential movement, during which High would have unrestricted movement and could continue committing similar crimes High's previous criminal history was also highlighted, including convictions for: Class 2 robbery, failure to register, Class 4 possession of a controlled substance, aggravated kidnaping, and aggravated criminal sexual assault. Given the abundance of proffered information, we find the court's determination that the State met its burden in proving that no lesser conditions could mitigate the threat he poses was not arbitrary, unsupported, or

unreasonable.

¶ 39 Next, High argues that the court erred in its determination that no condition or combination of conditions would reasonably ensure his appearance for later hearings or prevent him from being charged with a subsequent felony or Class A misdemeanor. Specifically, he argues the court's detention order does not comply with the Act because there was no evidence presented at the hearing indicating High is or would be a repeat offender who would not comply with court orders. High argues that he has never been afforded the opportunity to succeed on pretrial release because he has never been placed on pretrial conditions, due to his criminal background. Notably, the court made no finding to indicate that High is a flight risk, nor did it comment upon his appearance at later hearings. Rather, the court found that "no combination of conditions set forth in the new statute *** can mitigate the real and present threat to the safety of any person or persons in the community." The court listened both to the State's proffer explaining why it believed EM and other conditions shy of detention are inapplicable in this case, and defense counsel's argument in response that High is "upward there in age" and has no reported infractions since he has been in the custody of the jail.

¶ 40 In making its oral pronouncement, the court reiterated the specific articulable facts of the case at length, noted that High used his size and gender to coerce victims with threats of violence, and determined that High is a danger to society and that his age does not lessen this threat. Consequently, the court ordered that High shall be detained. In its written order, the court wrote that, "[High], through threat of force to a mother and her small children intimidated and used coercion to have [victim] withdraw money from an ATM." While greater explanation and additional evidence on this point may be preferable, and even necessary in some instances, the court's written findings here were nevertheless sufficient to comply with statutory authority. See *People v. Brown*, 2024 IL App (2d) 230489, ¶ 18 (finding the court's written order, read in

conjunction with the oral pronouncement, sufficient to comply with 725 ILCS 5/110-6.1). We find the facts proffered in this case warrant the court's conclusion.

¶ 41    Last, High asserts that he was denied an opportunity for a fair hearing prior to the entry of the order denying his pretrial release, where there were no changes in circumstance which triggered a need for a detention hearing. As thoroughly explained above, it was High who orally requested a hearing to have his pretrial status considered under the new Act. He conceded that he was giving up his ability to post monetary bond by so doing, and the State properly filed a responsive detention petition. Thereafter, he was given a full and fair detention hearing pursuant to the Act.

¶ 42                                    III. CONCLUSION

¶ 43    Following a thorough review of the record on appeal, for the reasons stated, the circuit court's order is affirmed.

¶ 44    Affirmed.