2024 IL App (1st) 240410-U

No. 1-24-0410B

Sixth Division
July 19, 2024

**NOTICE:** This order was filed under Supreme Court Rule 23 and is not precedent except in the limited circumstances allowed under Rule 23(e)(1).

IN THE
APPELLATE COURT OF ILLINOIS
FIRST DISTRICT

| | | |
|---|---|---|
| THE PEOPLE OF THE STATE OF ILLINOIS, | ) ) ) | Appeal from the Circuit Court of Cook County. |
| Plaintiff-Appellee, | ) ) | |
| v. | ) ) ) | No. 23 CR 12546-01 |
| CURTIS STONE, | ) ) ) | Honorable James Obbish, |
| Defendant-Appellant. | ) | Judge Presiding |

JUSTICE TAILOR delivered the judgment of the court.
Justice Hyman and Justice C.A. Walker concurred in the judgment.

**ORDER**

¶ 1    *Held:* The defendant forfeited his claims of error. Regardless, the circuit court did not abuse its discretion in denying the defendant's motion for release from pretrial detention.

¶ 2                                  BACKGROUND

¶ 3    Defendant Curtis Stone appeals under Illinois Supreme Court Rule 604(h) (eff. Sept. 18, 2023) from the circuit court's order entered on February 1, 2024, denying his "Motion to Release Defendant from Pretrial Detention with Non-Monetary Conditions Only," whereby he sought to vacate a previous judge's order to detain him under article 110 of the Code of Criminal Procedure

of 1963 (Code) (725 ILCS 5/110-1 *et seq*. (West 2022)), commonly known as the Pretrial Fairness Act.

¶ 4     On November 12, 2023, Stone was charged by felony complaint with two counts of armed habitual criminal (720 ILCS 5/24-1.7(a) (West 2022)), two counts of unlawful use of a weapon by a felon (UUWF) (720 ILCS 5/24-1.1(a) (West 2022)), one count of domestic battery/bodily harm (720 ILCS 5/12-3.2 (a)(1)) (West 2022)), one count of aggravated battery to a police officer (720 ILCS 5/12-3.05(d)(4) (West 2022)) and one count of aggravated assault with a deadly weapon (720 ILCS 5/12-2(c)(1) (West 2022). He was later indicted on all charges.

¶ 5     The charges stem from an initial incident of domestic violence wherein the police responded to a 911 call made by Stone's wife, the victim in this case. When the officers arrived on the scene, the victim told the police that Stone had strangled her, but she had not lost consciousness. She told the police that Stone had threatened her with a gun, but she was able to take that gun away from him and throw it out of the window into a neighbor's yard. The victim stated that Stone then threatened her with a second gun but she was able to run away from him and their second-floor residence.

¶ 6     The responding officers found Stone in the backyard of the residence with his hands in his pockets. When the officers ordered him to show his hands, Stone walked into the building, removed something from his pocket, and threw it inside the doorway. The item made a "clanking" noise as it hit the floor. Stone then appeared in the second-floor window, where he yelled at the officers before turning away from the window and closing it.

¶ 7     The victim met the officers in the backyard to show them where she had thrown Stone's gun. An officer entered the neighbor's yard and recovered one loaded Taurus 9mm firearm. The responding officers returned to the inside of the home, but they were unable to find Stone because

he had fled. Other officers found Stone nearby and took him into custody. As one of the officers was walking Stone back to his squad car, Stone head-butted the officer.

¶ 8     Meanwhile, the victim directed the police to a car parked in front of her address that belonged to Stone's mother but was being used by Stone. When the officers shone a flashlight into the car, they a saw a gun on the rear-passenger floorboard. After confirming that the car was registered to Stone's mother, officers recovered the gun, a loaded .45 caliber Smith and Wesson, along with multiple rounds of ammunition of various calibers, from the back of the unlocked car. The police also found Stone's wallet and identification on the center console of the car. The victim identified this second gun as the gun Stone used to threaten her.

¶ 9     At Stone's first court appearance on November 12, 2023, before Judge Ahmad, the State filed a petition for pretrial detention. The record from that hearing is not part of the record in this case.  In its petition, the  State alleged that they would show by clear and convincing evidence that the proof was evident and the presumption great that Stone committed the detainable offenses of domestic battery and UUWF; that Stone posed a real and present threat to any person or persons in the community based on the fact that Stone and the victim are married; that Stone strangled the victim causing visible abrasions to her neck; that Stone attacked her in this manner while armed with two loaded guns; and that no condition or combination of conditions could mitigate the risk that Stone posed. At the conclusion of the hearing, the judge granted the State's petition, and entered a written order detaining Stone. Stone did not appeal that order.

¶ 10    On January 29, 2024, Stone filed a "Motion to Release Defendant from Pretrial Detention with Non-Monetary Conditions Only," wherein he sought to vacate the previous detention order entered against him. Stone argued that the State had failed to show by clear and convincing evidence that the proof was evident and presumption great that he committed the underlying

offenses of domestic battery and unlawful use of a weapon by a felon and had failed to show that he posed any real threat to any persons in the community. Stone also suggested that he could be placed on electronic monitoring at his mother's house, if the court had any concerns about releasing him from custody. In response, the State recounted the facts of the offenses Stone committed, the circumstances surrounding Stone's arrest, as well as his criminal history, which included two convictions for escape and multiple weapons and narcotics offenses. Stone argued in response that the victim and police officers were lying.

¶ 11    On February 1, 2024, Judge Obbish heard arguments on Stone's motion seeking release from pretrial detention. The court reviewed the evidence presented and found it compelling that the victim swore out two felony complaints against Stone for domestic battery and aggravated assault with a firearm. The court also noted that the victim had called the police after Stone struck her, choked her and threatened her with two guns, and that the police found one gun where the victim told them she had thrown it after Stone pointed it at her. The court also noted that the police found another gun in a car parked in front of the victim's house, and although the car belonged to Stone's mother, Stone's identification and the gun used to threaten the victim were found inside. The court then recounted the defendant's extensive criminal history:

> "The defendant has eight felony convictions. That's not a record, but that's a fairly substantial record of prior criminal behavior. Very significantly, the defendant has two prior convictions of unlawful use of a weapon by a felon. The…prior convictions rendered him an armed habitual criminal… It's not just like he's got a couple of drug cases or something that didn't involve any kind of danger to the community, but the prior gun cases, and he got those gun convictions after he had four - he already had four felony convictions when he couldn't care less about the fact that felons can't possess a firearm…

As far as placing him on electronic monitoring, I don't think I've ever had a defendant in front of me with two convictions for Escape… I suspect those were escapes from electronic monitoring. … And so I don't think it's unreasonable on my part to believe electronic monitoring isn't going to work because he doesn't abide by those conditions. He's been convicted of two separate escapes."

¶ 12    The court also rejected Stone's contention that the victim and police were lying. The court stated:

"The black and white photographs submitted obviously can be admitted into evidence if it's appropriate. But it doesn't necessarily tell the whole story. People don't have to be choked to the point where they are losing consciousness or that there is permanent bodily injury done to them. Once you put your hands on somebody's else's throat, and State may be in a position of being able to meet their burden of proof. The law is very specific. We don't want anybody placing their hand on the throats of another human being. That's a … higher offense than a normal domestic battery. It's something that places individuals in great danger if the person completes what that act potentially does to a victim.

I think the prior judge who heard the detention hearing originally and felt that the defendant needed to be detained, I felt that was correct. I don't think there is any reason in the world that I would change. He is a danger to a very specific individual. That being the complaining witness in this particular case, and I don't see how I can put any conditions on him that would prevent the defendant from continuing to be a danger.

GPS bracelets. Those things are great. However, they don't prevent somebody from taking the devices off. Doesn't prevent somebody from violating those things and

committing an act of domestic violence. The defendant continues to have a strong history of possessing firearms when he is not entitled to do so. And he has demonstrated by his background that he is potentially likely to violate electronic monitoring or any of the conditions."

The judge then denied Stone's motion for pretrial release.

¶ 13    On February 14, 2024, Stone filed a notice of appeal pursuant to Illinois Supreme Court Rule 604(h). On the preprinted notice of appeal form, Stone checked all four boxes, indicating that he was appealing on the basis that (1) the State failed to meet its burden of proving by clear and convincing evidence the proof is evident or the presumption great that he committed the offense charged; (2) the State failed to meet its burden of proving by clear and convincing evidence that he poses a real and present threat to the safety of any person or persons or the community, based on the specific, articulable facts of the case; (3) that the State failed to meet its burden of proving by clear and convincing evidence that no condition or combination of conditions can mitigate the real and present threat to the safety of any person or persons or the community or his willful flight, based on the specific articulable facts of the case; and (4) the court erred in its determination that no condition or combination of conditions would reasonably ensure his appearance for later hearings or prevent him from being charged with a subsequent felony or Class A Misdemeanor. The notice of appeal does not contain any facts or law to support Stone's basic contentions.

¶ 14    On March 27, 2024, private counsel was granted leave to withdraw from representing Stone, and the Office of the State Appellate Defender was appointed as counsel on appeal. On June 12, 2024, Stone, through his new counsel, filed a notice in lieu of a Rule 604(h) memorandum and stood on his initial pleadings.

¶ 15                              ANALYSIS

¶ 16    The circuit court entered its order continuing Stones's detention on February 1, 2024, and Stone filed his notice of appeal on February 14, 2024. Accordingly, this court has jurisdiction per the Code. See 725 ILCS 5/110-6.1(j) (West 2022); Ill. S. Ct. R. 604(h) (eff. Dec. 7, 2023).

¶ 17    As we note above, Stone checked the boxes on the preprinted notice of appeal form indicating that at the February 1, 2024, hearing, the State did not establish by clear and convincing evidence that (1) the proof was evident or presumption great that he committed the charged offense, (2) he posed a real and present threat to the victim, victims, or community, and (3) no condition or combination of conditions could mitigate any threat he posed. Stone did not elaborate on these claims and has provided no additional argument, evidence or citation to legal authority. Appellate counsel did not file a memorandum and stood on his initial pleadings.

¶ 18    The State argues that Stone's notice of appeal is inadequate to support a finding of error because it is devoid of any facts to support his allegations. We agree. An appellant must present sufficient grounds on which this court can review any claims of error. *People v. Whitaker*, 2024 IL App (1st) 232009, ¶ 37 (finding the defendant's Rule 604(h) notice of appeal to be inadequate where he just checked the boxes and did not provide any further explanation as to his contentions of error). As the court in *People v. Inman*, 2023 IL App (4th) 230864, ¶¶ 12-13, explained, Rule 604(h) requires the notice of appeal to include a description of the relief to be requested and the grounds therefor. Ill. S. Ct. R. 604(h)(2) (eff. Sept. 18, 2023). "This would appear to mean some form of argument is required, along with justification for claiming entitlement to relief—like references to the record, the evidence presented, or, if possible, legal authority. *** [E]ven under the unique circumstances created by the Act, we cannot be expected to formulate an argument for defendant out of whole cloth, and we decline to do so." *Id.*

¶ 19    Recently, in *People v. Duckworth*, 2024 IL App (5th) 230911, ¶¶ 7-8, this court granted the State's motion to dismiss the defendant's appeal from an order denying him pretrial release where the defendant only checked the boxes setting forth the issues in his notice of appeal and failed to provide any grounds for the relief and provided no evidence on which to evaluate his claims. We found forfeiture because we were provided "nothing on which to base an analysis of the defendant's allegations on appeal" where he "couched his claims in the conclusory language of article 110 of the Code of Criminal Procedure of 1963 (725 ILCS 5/110 (West 2022)),referred to no evidence in the record upon which to evaluate his claims[,]" and failed to "provide any legal argument or authority in support of his claims." *Id.* ¶8; See also *People v. Lyons*, 2024 IL App (5th) 231180, ¶ 24 (dismissing the defendant's appeal because he failed to provide any argument in support of his appeal); *People v. Gonzalez*, 2024 IL App (2d) 230593-U, ¶ 34 (the defendant forfeited his claims on appeal where he only checked the boxes on the notice of appeal and did not provide any elaboration); *People v. Borden*, 2024 IL App (1st) 232027-U, ¶ 32 (recognizing the inability to review the defendant's claim of error on appeal where the "defendant did little more than check the boxes making conclusory claims of error"); *People v. High*, 2024 IL App (1st) 240586-U, ¶ 35 (declining to review the defendant's conclusory claim of error where the defendant did not reference evidence in the record and failed to provide any legal argument or authority in support of his claim). Because he only made conclusory allegations of error here, unsupported by argument, evidence or legal authority, we similarly find that Stone has forfeited these arguments and decline to address them.

¶ 20    Even if we were to address the merits of Stone's claims, the result would be no different. See *Whitaker*, 2024 IL App (1st) 232009, ¶ 42 (finding the defendant's conclusory claims of error "lacking" where the defendant checked boxes on the preprinted form but declining to dismiss the

appeal and considering the merits of the defendant's claims). If a defendant is detained pretrial, as occurred here, the "statute also imposes a continuing obligation for the court to assess whether continued detention is necessary." *People v. Hongo*, 2024 IL App (1st) 232482, ¶ 21. Specifically, the statute requires, "[a]t each subsequent appearance of the defendant before the court, the judge must find that continued detention is necessary to avoid a real and present threat to the safety of any person or persons or the community, based on the specific articulable facts of the case, or to prevent the defendant's willful flight from prosecution." 725 ILCS 5/110-6.1(i-5) (West 2022); See *People v. Thomas,* 2024 IL App (1st) 240479, ¶ 14 ("[T]he finding required by section 110-6.1(i-5) is *** a less demanding standard than what is required at [an initial] detention hearing, though both are concerned with fundamentally the same question"); *People v. Casey,* 2024 IL App (3d) 230568, ¶ 13 (although a trial court's determination of whether continued detention is warranted "necessarily entails consideration of the threat or flight risk posed by a defendant and the potential mitigation of such threat or flight risk by conditions of release, the Code does not require the court to again make specific findings that the State proved the three propositions by clear and convincing evidence as required at the initial hearing"). We review the circuit court's determination on continued detention for abuse of discretion. *Id.* ¶¶ 11-13.

¶ 21     In this case, it is undisputed that following an initial pretrial detention hearing on November 12, 2023, Stone was denied pretrial release. Stone did not appeal that order. Then, on January 29, 2024, Stone filed a "Motion to Release Defendant from Pretrial Detention with Non-Monetary Conditions Only," which sought to vacate the November 12, 2023, detention order on the basis that the State failed to show by clear and convincing evidence that the proof was evident and presumption great that he committed the underlying offenses of domestic battery and UUWF

and that the State failed to show that he posed any real threat to any persons in the community. A hearing on Stone's petition was held the next day.

¶ 22    The trial court's comments at the hearing on Stone's motion indicate that it believed that Stone's continued detention was warranted to avoid a real and present threat to the safety of the victim and the community based on the specific facts of the case. The court noted that Stone choked the victim, possessed firearms, and had a history of violating electronic monitoring. The circuit court did not abuse its discretion when it determined that continued detention was necessary in this case.

¶ 23                                          CONCLUSION

¶ 24    Stone forfeited his claims of error by providing this court with conclusory, unsupported claims of error. Even considering the merits of Stone's claims, the circuit court's decision to continue Stone's detention was supported by the record, and thus did not constitute an abuse of discretion.

¶ 25    Affirmed.